PAUL A. TURCKE (applicant *pro hac vice*)
MOORE SMITH BUXTON & TURCKE, CHARTERED
950 West Bannock Street, Suite 520
Boise, Idaho 83702
Telephone: (208) 331-1800
Facsimile: (208) 331-1202
pat@msbtlaw.com

DENNIS PORTER (Cal. Bar #67176)
Attorney at Law
8120 36th Avenue
Sacramento, CA 95824-2304
Telephone: (916) 381-8300
Facsimile: (916) 381-8726
dlporter2@yahoo.com

Attorneys for Defendant-Intervenors-Applicants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

CENTRAL SIERRA ENVIRONMENTAL RESOURCE CENTER, et al.

    Plaintiffs,

vs.

UNITED STATES FOREST SERVICE, et al.

    Defendants,

and

CALIFORNIA OUTDOOR HERITAGE ALLIANCE, CALIFORNIA ASSOC. OF 4 WHEEL DRIVE CLUBS, MERCED DIRT RIDERS, MODESTO HOUNDSMEN, DISTRICT 36 MOTORCYCLE SPORTS COMMITTEE, CALIFORNIA OFF ROAD VEHICLE ASSOC., and THE BLUERIBBON COALITION,

    Defendant-Intervenor-Applicants.

Case No. CV-10-2172-FCD-GGH

DECLARATION OF CALEB ASHBY IN SUPPORT OF MOTION TO INTERVENE

1. My name is Caleb Ashby, and I reside in Modesto, California. I am a member of the Modesto Houndsmen ("Houndsmen"). I have reviewed the complaint on file in this case, am over the age of majority and am otherwise competent to testify to the matters described herein.

DECLARATION OF CALEB ASHBY
IN SUPPORT OF MOTION TO INTERVENE - Page 1

2. Houndsmen is a nonprofit organization, which is a member club of the California Houndsmen for Conservation ("CHC"). Our unifying interest is in using trained dogs to pursue mammals, ie "hound hunting." CHC and Houndsmen exist to cultivate good will and unity of fellow sportsmen, to develop effective relationships with ranchers, landowners, stockmen, the general public and houndsmen, to cooperate with wildlife management agencies and law enforcement efforts, to promote the conservation, propagation and perpetuation of wildlife and wildlife habitat, to promote proper sportsmanship and outdoor ethics and to educate the public about hound hunting. CHC, and thereby Houndsmen, are among the organizations forming the California Outdoor Heritage Alliance.

3. The term "hound hunting" is often misunderstood as it implies, to some, a singular focus on harvesting the subject animal of the pursuit. Instead, hound hunters are often driven by their relationship, some might say fanaticism, with their dogs, their desire to become more effective in locating, pursuing and capturing target species with their team of dogs and the associated interaction with the outdoors, family and other enthusiasts. Hound "hunting" in fact infrequently involves the actual harvest of the target or any animal. More often, the target animal is caught (usually by being "treed" or climbing a tree beyond the reach of the dogs), the dogs are collared and removed from the area and the "caught" animal is free to leave. Where animals are taken, hound hunting is an extremely effective wildlife management tool, because it allows the selective harvest of only the target individual accordance with management or other criteria, with little or no risk of "operator error" accepted in other forms of harvest. For instance, wildlife management of bears and mountain lions (where legal) typically targets harvest of mature males, for varied reasons including to avoid inadvertent harvest of females still rearing

DECLARATION OF CALEB ASHBY
IN SUPPORT OF MOTION TO INTERVENE - Page 2

young, to maintain reproducing females in the population, to control the impacts associated with males defending their territory by killing other members of their species (including their own offspring), and because mature males are more desirable trophies to hunters. When animals not meeting harvest criteria are caught (e.g. females or immature males) they can be "released" unharmed, in contrast to other forms of hunting where it is more likely, particularly with bears and felines, to misjudge the size and/or sex of an animal in the field. Hound hunting in the United States dates back to 1650 and beyond that to British culture, and was practiced by the founding fathers of American government and conservation including George Washington, Thomas Jefferson and Theodore Roosevelt.

4. I am an avid outdoor enthusiast and my activities regularly include Forest Service-managed lands for a variety of recreational and aesthetic pursuits, including camping, hound and other forms of hunting, fishing, photography, wildlife viewing, and other similar interests. Off-road vehicles are an integral part of hound hunting, particularly when one includes within that term full-size pickups and even stock 4 wheel drive vehicles. A typical "chase" involves more challenging foot travel in a forest environment than most visitors would sanely choose to experience, but vehicle travel is essential to carry dogs and equipment to the point of "turning out" dogs and continuing on foot. Similarly, a road/trail network is an essential part of finding a huntable track or trail, as such routes traverse meaningful portions of many areas and many animals (including target species) adapt to and extensively travel the route network. Finally, on the occasions when an animal is taken, vehicle access can facilitate safe and proper retrieval of the animal. As such, I have regularly operated off-highway vehicles ("OHVs") on roads and trails within National Forests throughout California and other western states, including the Stanislaus National Forest, and have future plans

to continue such activity to the extent authorized by the Forest Service.  My experience and activities are typical of Houndsmen members, who conduct similar activities and have similar plans.

5. Houndsmen and its members actively participated in the administrative process leading to adoption of the challenged travel plan.  This included appearing at meetings, reviewing the planning documents, and submitting written comments.

6. I have reviewed the Complaint filed in this matter and conclude that Plaintiffs' requested relief could have profound negative impacts on Houndsmen members' recreational and aesthetic interests, including my own.  As I read Plaintiffs' Complaint, they contend the Forest Service has illegally authorized OHV access to public lands in various parts of the Stanislaus, and ask this Court to declare the travel plan to be unlawful, and to effectively re-write the plan to plaintiffs' satisfaction pending remand.  Complaint (Doc. No. 1) at 22, Prayer for Relief, ¶ E ("enjoin the Forest Service from implementing the ROD as to the decision to add unauthorized motorized routes…and from allowing other motor vehicle use…that is contrary to law, as specifically requested by plaintiffs in the course of these proceedings….".  These terms and conditions are ambiguous, but such an injunction would certainly restrict historical vehicle access which existed immediately prior to the travel plan.  Should the Court grant any meaningful part of this relief such an order would have adverse effects on my chosen recreational access, associated recreational activities, and those of other Houndsmen members.

7. We are particularly concerned with the claims addressing a Forest Service duty to designate a "minimum road system."  We are cognizant of a broader effort in the preservation community to create new law on this specific issue, which we suspect is intended to "minimize" the basic transportation network in our National Forests.  From a hound hunter's perspective, this

DECLARATION OF CALEB ASHBY
IN SUPPORT OF MOTION TO INTERVENE - Page 4

is especially threatening because what some may perceive as unnecessary roads or trails provide critical access to otherwise inaccessible areas, habitat or wildlife travel corridors.  We fear it is the proverbial "road that goes nowhere" which might be the first to be eliminated and that is the type of route which can be particularly valuable in starting a track, recovering dogs, other members of a hunting party, or in efficiently and safely retrieving a harvested animal.

8. Neither I nor Houndsmen support unmanaged or poorly managed vehicle access to Forest Service or any lands.  We do not believe that is what the Stanislaus Forest has done through the challenged travel plan.  We are not fully satisfied with the travel plan, but believe it reflects a reasoned effort on the part of the Forest Service to strike a balance in fulfilling challenging duties.  A decision of this nature creates myriad challenges that we believe, in general terms, are best resolved by scientists and agency professionals in consultation with the interested public and partner organizations such as state agencies, counties, and organizations like Houndsmen and our co-intervenor applicants.

9. Houndsmen and its members attempt to maintain a cooperative relationship with all land management agencies, including the Stanislaus National Forest.  At the same time, we understand that this agency and other Federal Defendants must balance issues, land uses and legal duties beyond those stressed by us.  These differences have been reflected in Forest Service travel decision, including the challenged travel plan for the Stanislaus Forest, which closed many existing routes that have historically been used by hound hunters.

10. We are hopeful that Defendants will present a vigorous defense to Plaintiffs' claims in this case.  Given the broad spectrum of interests potentially impacted by Plaintiffs'

DECLARATION OF CALEB ASHBY
IN SUPPORT OF MOTION TO INTERVENE - Page 5

claims, we are concerned that the access perspective unique to hunters be specifically defended in litigation or settlement of this action. Our legal interests in this action are not identical, and may be contrary to, Defendants' interests, and we anticipate a need to present different information and legal arguments than might be presented by some or all Defendants. As I have indicated earlier, access issues are complex and we often feel like the least understood member of the hunting community, and we do not wish to be relegated to static support or opposition to some other parties' positions, but instead wish to be actively involved and able to adapt as may only be possible with full party status. We are particularly concerned about the prospect of settlement negotiations and wish to have a role in any possible settlement discussions. Like our co-intervenor-applicants, we have unique interests and objectives in this litigation that are not identical to those of the Forest Service. A "loss" for the Forest Service simply changes the manner in which they conduct their never-ending yet ever-changing management duties. A "loss" for us can mean elimination of personal, on-the-ground activity, including an increased safety risk to ourselves and our dogs. For all of these reasons, Houndsmen has determined it is essential to intervene and obtain party status in order to defend its legal rights at stake in this litigation.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this ___th day of November, 2010, at Modesto, California.

Caleb Ashby

DECLARATION OF CALEB ASHBY
IN SUPPORT OF MOTION TO INTERVENE - Page 6